Citation Nr: 1450469 
Decision Date: 11/14/14 Archive Date: 11/26/14

DOCKET NO. 10-00 877 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to an initial rating in excess of 10 percent for residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease. 


REPRESENTATION

Veteran represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

John Francis, Counsel 






INTRODUCTION

The Veteran served on active duty for training from March 1980 to May 1980 and on active duty from November 1980 to October 1983. 

This appeal comes before the Board of Veterans' Appeals (Board) from a February 2009 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia that granted service connection and a 10 percent rating for residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease, effective the July 8, 2008 date of receipt of a claim for service connection. 

In a January 2010 substantive appeal, the Veteran requested a hearing before the Board sitting at the RO. He failed to report for a hearing scheduled in October 2014 with no good cause shown. Therefore, the request for a hearing is considered withdrawn. 38 C.F.R. § 20.704 (d) (2014). 

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. The Board notes that, in addition to the VBMS paperless file, there is a separate electronic (Virtual VA) paperless claims file associated with the Veteran's claim. A review of the Virtual VA claims paperless file reveals documents that are either irrelevant to the issue on appeal or duplicative of those contained in the VBMS paperless file.

The issues of entitlement to service connection for a lumbar spine disorder and a right leg disorder as secondary to service-connected residuals of open reduction internal fixation surgery of the left ankle may have been raised by the Veteran in an October 2009 substantive appeal. Such issues have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).



FINDING OF FACT

Since the July 8, 2008 effective date for service connection, the Veteran's residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease are manifested by X-ray evidence of arthritis and no more than moderately limited range of motion with subjective complaints pain, weakness, and lack endurance without malunion of the os calcis or astragalus or ankylosis of the ankle, subastragalar or tarsal joint. 


CONCLUSION OF LAW

The criteria for an initial rating in excess of 10 percent for residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.14, 4.21, 4.40, 4.45, 4.71a, Diagnostic Codes 5003, 5271 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

With regards to the instant claim, the February 2009 rating decision granted service connection for residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease (hereafter, left ankle disability) and assigned an initial 10 percent rating, effective July 8, 2008. The Veteran subsequently appealed with respect to the propriety of the initially assigned rating from the original grant of service connection. VA's General Counsel has held that no VCAA notice is required for such downstream issue. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). In addition, the Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, § 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006). In this case, the Veteran's claim for service connection for a left ankle disability was granted and an initial rating assigned in the February 2009 rating decision on appeal. Therefore, as the Veteran has appealed with respect to the initially assigned rating, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The Board also finds that VA has complied with all assistance provisions of the VCAA. The evidence of record contains the Veteran's service treatment records and post-service VA treatment records. In correspondence in July 2008, the Veteran reported that he received all his medical care at a VA Medical Center. Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional evidence that is necessary for a fair adjudication of the claim that has not been requested or obtained. 
 
The Veteran was also afforded VA examinations in February 2009 and July 2011 in conjunction with the claim on appeal. In an April 2009 notice of disagreement, the Veteran asserted that the range of motion of his ankle was markedly limited and more severe than noted in the VA examinations. However, neither the Veteran nor his representative alleged that the examinations are inadequate for rating purposes but rather disputed the assessment of the examiner. Moreover, the Board finds that the examinations are adequate in order to evaluate the Veteran's service-connected left ankle disability as they include an interview with the Veteran, a review of the record, and a full clinical examination of the left ankle, addressing the relevant rating criteria. Therefore, the examination reports provide detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim. 


II. Analysis

In his April 2009 notice of disagreement and in a January 2010 substantive appeal, the Veteran argued that his left ankle disability is more severe than is contemplated by the initial rating. 

The Veteran's service-connected residuals of an open reduction internal fixation surgery of the left ankle with degenerative joint disease is rated under Diagnostic Code 5003 for degenerative arthritis.

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 
1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. In general, it is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. The Board may consider whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portrays the anatomical damage and the functional loss with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45.

Codes predicated on limitation of motion do not prohibit consideration of a higher rating based on functional loss due to pain on use or due to flare-ups under 38 C.F.R. §§ 4.40, 4.45, 4.59. Johnson v. Brown, 9 Vet. App. 7 (1996); DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). A finding of dysfunction due to pain must be supported by, among other things, adequate pathology. 38 C.F.R. § 4.40. "[F]unctional loss due to pain is to be rated at the same level as the functional loss when flexion is impeded." Schafrath, 1 Vet. App. at 592. Evaluating the disability under several diagnostic codes, the Board considers the level of impairment of the ability to engage in ordinary activities, including employment, and assesses the effect of pain on those activities. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). 

Limitation of motion of the ankle warrants a 10 percent rating if moderate and a 20 percent rating if marked. 38 C.F.R. § 4.71a, Diagnostic Code 5271. Normal range of motion of the ankle is from zero to 20 degrees of dorsiflexion from zero to 45 degrees of plantar flexion. 38 C.F.R. § 4.71, Plate II. The words ""moderate," and "severe" as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. 

Degenerative or traumatic arthritis, established by X-ray findings, is rated on the basis of limitation of motion under the appropriate diagnostic code for the specific joint or joints involved. When there is arthritis with at least some limitation of motion, but to a degree which would be noncompensable under a limitation-of-motion code, a 10 percent rating will be assigned for each affected major joint or group of minor joints. In the absence of limitation of motion, X-ray evidence of involvement of two or more major joints or two or more minor joint groups will warrant a 10 percent rating. Absent limitation of motion, a 20 percent rating is warranted for X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

VA treatment records reflect regular outpatient care with occasional notations detailing a history of a left ankle fracture with pin placement. However, such records reflect no clinical examinations, treatment, or assessments of the left ankle function or recommendations for the removal of the screws or pins. 

A February 2009 VA examination report reflects the Veteran's complaints that his left ankle disability "slowed him down" but that he was able to manage his daily activities. The Veteran reported that he experienced left ankle pain with flare-ups after standing or walking for more than two to three hours. He reported stiffness, weakness, lack of endurance and occasional swelling and "giving way." The Veteran used a walking stick and prescription medication for pain provided at a VA outpatient clinic. He reported that he was not working because of unspecified medical disabilities. On examination, the examiner noted a normal gait and a healed surgical scar that was supple, non-tender, and non-adherent to the underlying tissue. There was no heat, redness, swelling, effusion, or loss of function. Range of plantar flexion was zero to 45 degrees with pain at 45 degrees and dorsiflexion zero to 20 degrees with pain at 20 degrees. Repetition produced increased pain, weakness, and lack of endurance but did not further reduce the range of motion. There was no instability. Concurrent X-rays showed the presence of the metallic screws in the distal fibula but no definite acute fracture or dislocation. There was mild calcification and mild degenerative changes in the talar cuboid area. The examiner assessed the disability as mild to moderate. 

A July 2011 VA examination report reflects the Veteran's reports that his left ankle started aching in about 2000 when he was doing a lot of walking on his job in a construction trade. He reported stiffness, weakness, incoordination, decreased speed of joint motion, and symptoms of inflammation. The examiner also noted the Veteran's reports of deformity and instability. The Veteran reported that he was able to stand for up to one hour and walk one to three miles. He continued to use prescription medication, used high top boots, and intermittently used a cane. On examination, the examiner observed an abnormal gait and weight bearing but no atrophy of the calf muscles. There was tenderness of the joint but no clinical instability or abnormal angulation. Range of plantar flexion was zero to 40 degrees and dorsiflexion zero to 18 degrees with pain on motion. There was additional pain on repetition but no additional loss of range of motion. The examiner assessed the left ankle disability as causing moderate effect on impact activity, prolonged weight bearing and lateral movement such as when shopping, chores, exercise and sports but only mild effects on other daily activities. 

Considering the pertinent evidence in light of the above, the Board finds that a rating in excess of 10 percent for the Veteran's residuals of open reduction internal fixation surgery of the left ankle is not warranted. A rating in excess of 10 percent is not warranted under Diagnosed Code 5003. In this regard, there has been no X-ray finding of arthritis in two or more major or minor joints to warrant a 20 percent rating under this code.

The Board has also considered the applicability of other, potentially applicable diagnostic criteria for rating the Veteran's left ankle disability. Under Diagnostic Code 5271, a higher rating for limitation of motion of the ankle pursuant to requires marked limitation of motion. See 38 C.F.R. § 4.71a. In this case, the evidence shows that plantar flexion was to 40 degrees and dorsiflexion was to 18 degrees, both at worst, in July 2011, which demonstrates near normal range of motion in the left ankle. His range of motion was found to be normal in February 2009. Thus, the medical evidence documents that the service-connected residuals of open reduction internal fixation surgery of the left ankle are productive of, at most, moderate limitation of motion of the ankle under Diagnostic Code 5271.

VA may consider any demonstrated functional loss attributable to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, in conjunction with criteria under the rating formula. See 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 204-7; Johnson, 9 Vet. App. 7. In this regard, the Board recognizes that during his various VA examinations, the Veteran reported left ankle pain and objective evidence of pain was found on range of motion testing but without additional limitation of motion. Moreover, to the extent that pain was reported by the Veteran after repetitive motion at his VA examinations, the VA examiners noted that the Veteran did not demonstrate any further loss of motion or function due to such symptoms. In view of the foregoing, even after taking the factors identified in DeLuca into consideration, the Board finds that a higher rating based upon a marked limitation of ankle motion cannot be granted.

Moreover, the Board also notes that it is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259 (1994). Such is not the case with the Veteran's residuals of open reduction internal fixation surgery of the left ankle. As discussed above, the symptoms associated with the Veteran's disability-namely limitation of ankle motion, pain, weakness and lack of endurance-are contemplated in the application of Diagnostic Code 5003. Any additional separate rating for moderate limitation of ankle motion under Diagnostic Code 5271 would result in double compensation for the same symptomology in violation of anti-pyramiding provisions. See 38 U.S.C.A. § 1155, 38 C.F.R. § 4.14; see also Brady v. Brown, 4 Vet. App. 203, 206 (1993). 
 
In addition, there is no higher rating assignable any other potentially applicable diagnostic code. There is no competent evidence of record documenting the presence of any ankylosis in the ankle or its equivalent so an increased or separate rating is not warranted under Diagnostic Codes 5270 or 5272. Also, as there is no competent evidence demonstrating that the service-connected disability is manifested by malunion of the os calcis or astragalus, or astragalectomy. Therefore, Diagnostic Codes 5273 are 5274, respectively, are inapplicable. See 38 C.F.R. § 4.71a. Furthermore, the left ankle disability also has not been shown to involve any other factor(s) warranting evaluation under any other provision(s) of VA's rating schedule.

In assessing the severity of the disability under consideration, the Board has considered Veteran's assertions as to the type and frequency and/or severity of his symptoms, which he is certainly competent to provide. See, e.g., Layno v. Brown, 
6 Vet. App. 465, 470 (1994). However, the criteria needed to support a higher rating require medical findings that are within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As such, the lay assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support assignment of a rating in excess of 10 percent for the left ankle disability. 

The Board has considered whether staged ratings under Fenderson, are appropriate for the Veteran's service-connected residuals of open reduction internal fixation surgery of the left ankle; however, the Board finds that his symptomatology has been stable during the course of this appeal. Therefore, assigning a staged rating for such disability is not warranted.

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id. 

In this case, the Board finds that the applicable schedular criteria are adequate to rate the disability under consideration at all points pertinent to this appeal. The rating schedule fully contemplates the described symptomatology. As discussed above, the Veteran current symptoms include moderate limitation of ankle motion with subjective complaints of pain, weakness and lack of endurance. A comparison between the Veteran's symptoms and the criteria of the rating schedule indicates that the rating criteria reasonably describe his level of impairment. Significantly, there is no medical indication or argument that the applicable criteria are otherwise inadequate to rate the disability. Thus, the threshold requirement for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) is not met. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

Further, the Board notes that, pursuant to Johnson v. McDonald, 762 F.3 1362 (Fed. Cir. 2014), a veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, in this case, even after affording the Veteran the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there is no additional left ankle impairment that has not been attributed to a specific service-connected disability. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions.

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a TDIU is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. The Court further held that when evidence of unemployability is submitted at the same time that the Veteran is appealing the initial rating assigned for a disability, the claim for TDIU will be considered part and parcel of the claim for benefits for the underlying disability. Id. In this case, the February 2009 VA examiner noted that the Veteran was unemployed and not working due his medical disabilities but did not specify the nature of such disabilities. The July 2011 VA examiner noted that the Veteran was unemployed and that he had been laid off from his last job. Further, the Veteran has not alleged being unable to work as a result of his service-connected residuals of open reduction internal fixation surgery of the left ankle. Therefore, the Board finds that the issue of entitlement to a TDIU is not expressly raised by the Veteran or reasonably raised by the record and, consequently, further consideration of such is not necessary. 

The Board has also considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim for a higher rating for residuals of open reduction internal fixation surgery of the left ankle. Therefore, the benefit of the doubt doctrine is not applicable in the instant appeal and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102; see also Gilbert, supra.


ORDER

An initial rating in excess of 10 percent for residuals of open reduction internal fixation surgery of the left ankle with degenerative joint disease is denied. 



____________________________________________
KRISTY L. ZADORA
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs